**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GOTHAM CITY ENTERPRISES, LLC, and STARLING CITY ENTERPRISES, LLC,

Plaintiffs,

v.

ABUNDANCE WEALTH COUNSELORS, LLC and RICHARD F. DEFLURI,

Defendants.

No. 4:25-CV-01725

(Chief Judge Brann)

**MEMORANDUM OPINION**

**MARCH 6, 2026**

## I.    BACKGROUND

On September 15, 2025, Plaintiffs Gotham City Enterprises, LLC and ("Gotham") Starling City Enterprises, LLC ("Starling") (collectively, "Plaintiffs") filed a five-count complaint against Defendants Abundance Wealth Counselors, LLC ("Abundance") and Richard F. DeFluri ("DeFluri") (collectively, "Defendants") for the alleged misuse and misappropriation of Plaintiffs' funds by Defendants.[1]

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2] The motion is now ripe for

---

[1]    Doc. 1 (Compl.).
[2]    Doc. 10 (Mot.).

disposition. For the reasons that follow, it is granted in part and denied in part. However, Plaintiffs will be provided leave to amend the complaint.

## II.    LAW

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[3] and *Ashcroft v. Iqbal*,[4] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[6]

---

[3]    550 U.S. 544 (2007).
[4]    556 U.S. 662 (2009).
[5]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[6]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[7] Normally, to consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[8] But consideration of materials outside the complaint is not completely barred on a Rule 12(b)(6) motion. Courts may consider any documents that are integral or explicitly relied upon in the complaint.[9] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[10] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[11] It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document.[12] In this matter, this Court finds that these conditions have been met, and will consequently consider the attachments to Plaintiffs' complaint.[13]

### B.    Facts Alleged in the Complaint

The facts alleged in the complaint, which this Court must accept as true for the purposes of this motion, are as follows.

---

[7]    *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[8]    *See* FED. R. CIV. P. 12(d).

[9]    *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[10]    *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[11]    *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

[12]    *Faulkner*, 463 F.3d at 134.

[13]    Docs. 1-1, 1-2, 1-3, 1-4 (Exhibits A-D).

Donald Abbey ("Abbey") is the chairman and chief executive officer of a real estate company.[14] Abbey formed two companies, Gotham and Starling, to hold assets and investments in trust for him.[15] Additionally, Abbey sought out a wealth management advisor to assist with investment and management of his assets, and decided to hire his friend DeFluri.[16] DeFluri is a registered investment advisor and the founder of Abundance, a wealth management firm that advertises its ability to invest and manage assets successfully without frequent intervention by the client.[17] Specifically, Abundance's website states that "we manage the administrative details so that you can focus your energy and attention on what you do best . . . safe in the knowledge that we are working in your best interests as a fiduciary."[18] DeFluri and Abundance managed millions of dollars of investments for Abbey.[19]

In early 2024, Abbey was made aware that some of his investment funds had been moved into a trust with beneficiaries of DeFluri and DeFluri's son.[20] Abbey had not been given notification of nor had he approved such a transfer.[21] As a result, Abbey terminated his investment relationship with DeFluri and Abundance, including the portfolios held by Gotham and Starling.[22] In the final summaries of

---

[14]  Doc. 1 at ¶ 12; Doc. 12 (Br. in Supp.) at 1.
[15]  Doc. 1 at ¶ 19.
[16]  *Id.* at ¶¶ 15, 21.
[17]  *Id.* at ¶ 16.
[18]  *Id.* at ¶ 17.
[19]  *Id.* at ¶ 18.
[20]  *Id.* at ¶ 26.
[21]  *Id.*
[22]  *Id.* at ¶ 28.

Abbey's investment portfolio provided by Abundance upon the termination of the relationship, both Gotham and Starling's summaries listed investments in a private equity company described as "SOURCE CAP RES 4%" ("SOURCECAP"), which had a public trading symbol listed as SOURCECAP.[23] It appeared from the summaries that both Gotham and Starling had invested $1,500,000 in SOURCECAP and both had an unrealized gain of $612,915.[24] However, there was no publicly traded company with the SOURCECAP symbol on the public markets.[25]

Abbey asked DeFluri to explain the nature of the investment and SOURCAP as a company, and DeFluri would not respond.[26] Gotham then received a K-1 from Sourcecap, LLC, which stated that DeFluri had purchased from Gotham a 50% interest in Sourcecap, LLC for $1,056,580 in fall of 2024; Abbey had not been aware that Gotham owned any part of Sourcecap, LLC.[27] Counsel for Gotham and Starling then contacted DeFluri in April 2025, asking who managed Sourcecap, LLC and for any information documenting the investment transaction.[28] DeFlrui had formed Sourcecapp, LLC about a month before the loan was given, and he stated that it had been formed to invest in mortgages in line with the agreed upon investment strategy.[29]

---

[23]   *Id.* at ¶ 31.
[24]   *Id.* at ¶ 33.
[25]   *Id.* at ¶ 34.
[26]   *Id.* at ¶¶ 35-36.
[27]   *Id.* at ¶¶ 37-38.
[28]   *Id.* at ¶ 40.
[29]   *Id.* at ¶ 45.

As Plaintiffs would discover, the investment listed as "SOURCE CAP RES 4%" was actually a personal loan made on October 13, 2014 to DeFluri for $1.5 million from Gotham and Starling.[30] Defendants stated that Gotham and Starling had agreed to this loan, with 4% annual interest accruing and no repayment provisions.[31] Defendants also stated that this loan was personal between Abbey and DeFluri, made outside of the advisory relationship, and said that Abbey signed off on such an agreement.[32] However, Abbey insists that he had not agreed to this loan nor its terms.[33] Accordingly, Plaintiffs Gotham and Starling brought the instant suit to recover from Defendants DeFluri and Abundance.

### C.     Analysis

Defendants argue that each count is barred by the statute of limitations and independently fails to state a claim. I will address each in turn.

#### 1.     Statute of Limitations

Defendants argue that each count is untimely under their applicable statute of limitations. Preliminarily, statute of limitations claims should generally be brought as affirmative defenses, rather than motions to dismiss; however, "a court may

---

[30]   *Id.* at ¶¶ 44-45. Defendants stated that such a loan was made on October 13, 2014, but Plaintiff additionally pleads that transfers were occurring as late as October 2017. *Id.* at ¶ 60.
[31]   *Id.* at ¶ 46.
[32]   *Id.* at ¶¶ 48, 53.
[33]   *Id.* at ¶¶ 55-58.

nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint."[34]

Pennsylvania applies the discovery rule. "Under the Pennsylvania discovery rule, the 'commencement of the limitations period is grounded on inquiry notice that is tied to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice to the full extent of the injury, the fact of actual negligence, or precise cause.'"[35] "The statute of limitations accordingly begins to run when the plaintiff knew or, exercising reasonable diligence, should have known (1) he or she was injured and (2) that the injury was caused by another."[36] This is an objective inquiry, and "a plaintiff's actions are examined to determine whether the plaintiff demonstrated 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others.'"[37] Plaintiffs generally bear the burden of showing their reasonable diligence.[38]

"The doctrine of fraudulent concealment tolls the statute of limitations where a plaintiff has relaxed his vigilance due to the defendant's fraud or concealment."[39]

---

[34] *McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010).

[35] *Adams v. Zimmer*, 943 F.3d 159, 163 (3d Cir. 2019) (quoting *Gleason v. Borough of Moosic*, 609 Pa. 353 (2011)).

[36] *Id.*

[37] *Kennedy v. Ethicon, Inc.*, 5:20-cv-00185, 2020 WL 4050459, at *8 (E.D. Pa. July 20, 2020) (quoting *Nicolaou v. Martin*, 195 A.3d 880, 893 (Pa. 2018)).

[38] *Adams*, 943 F.3d at 163-64.

[39] *Schmidt v. Skolas*, No. 12-3265, 2018 WL 2129487, at *3 (E.D. Pa May 9, 2018) (citing *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005).

"The United States Court of Appeals for the Third Circuit has recognized equitable tolling where the defendant 'has actively misled the plaintiff regarding the cause of action.'"[40] "Fraudulent concealment may be intentional or unintentional; however, 'mere mistake, misunderstanding, or lack of knowledge is insufficient.' . . . [instead, t]here must be an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury."[41] However, silence can constitute fraudulent concealment "'where there is an affirmative duty to disclose because of a fiduciary relationship between the parties or a similar relationship of trust and confidence.'"[42]

Additionally, even where a fiduciary relationship renders silence an affirmative act of concealment, a plaintiff is still obligated to exercise reasonable diligence to justify tolling the statute of limitations.[43] Indeed, a fiduciary relationship is "'pertinent to the question of when a plaintiff's duty to investigate arose,' [but] the relationship is not dispositive."[44]

---

[40] *Miller v. Aluminum Co. of Am.*, 679 F. Supp. 495, 500 (W.D. Pa. 1988) (quoting *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307-08 (3d Cir. 1983)); *see also In re Mushroom Transp. Co.*, 382 F.3d 325, 338-39 (3d Cir. 2004).

[41] *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991); *Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000).

[42] *Arndt v. Johnson & Johnson*, 67 F. Supp. 673, 679 (E.D. Pa. 2014) (quoting *Leonard v. City of Pittsburgh*, 570 F. App'x 241, 245-46 (3d Cir. 2014)).

[43] *See Perelman v. Perelman*, 545 F. App'x 142, 150 (3d Cir. 2013); *Neff v. Unum Provident Corp.*, No. 14-6696, 2015 WL 5036390, at *5 (E.D. Pa. Aug. 19, 2015)

[44] *Perelman*, 545 F. App'x at 150.

Typically, the notice and diligence of a plaintiff are for the jury to determine, but where reasonable minds cannot differ in finding that a party "'knew or should have known on the exercise of reasonable diligence of his injury and its cause, … the discovery rule does not apply as a matter of law.'"[45] "[B]ecause the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion."[46]

Here, the limitations defenses are not obvious from the face of the complaint. Defendants argue that Plaintiffs' claims are related to action occurring at the latest, measured by Plaintiffs' pleadings, in October 2017 and that, therefore, filing in September 15, 2025 would be over eight years after relevant conduct.[47] The earliest statute of limitations applying to Plaintiffs' counts is a two-year period and the latest is a six-year period.[48] Looking retroactively from the filing date, applying a two-year statute of limitation period would render claims timely if they began accruing on or after September 15, 2023.[49] Plaintiffs plead that Abbey was first "alerted to an

---

[45]   *Adams*, 943 F.3d at 164.

[46]   *Drennan v. PNC Bank, NA*, 622 F.3d 275, 301-02 (3d Cir. 2010).

[47]   Doc. 12 (Br. in Supp.) at 4-8.

[48]   Doc. 12 (Br. in Supp.) at 4, 6. Plaintiffs do not address whether Defendants state with accuracy the applicable periods and instead argue tolling is applicable. Because I find that tolling is appropriate, and, thus, Plaintiffs' filing would be proper for even the shortest period, I do not address whether Defendants' provided limitations periods are accurate. If Plaintiffs do take issue with the applicable limitations periods, they should address the issue at the next stage, as Defendants must raise the issue as an affirmative defense.

[49]   *McPherson*, 392 F. App'x at 944.

9

anomaly in his investment accounts" in "early 2024."[50] Accordingly, if the tolling rule applies here and Plaintiffs' claims began to accrue in early 2024, any and all of Plaintiffs' claims would be well within the applicable period.

And, indeed, Plaintiffs have pled sufficient facts to suggest that the application of the equitable tolling rule plausibly applies here. The fiduciary relationship renders Defendants' alleged silence with respect to the fraudulent loan an affirmative act of deception.[51] Additionally, a jury could conclude that Plaintiffs did not know, and had no obligation to have known, about the deception until being informed of facts in early 2024 that would raise concerns about Defendants' management.[52] This is especially true given the fiduciary relationship between the parties, as Plaintiffs have pled Defendants had complete control of Plaintiffs' finances and advertised minimal client involvement in the investment procedure.[53] Accordingly, at the very least, reasonable minds can differ on the application of the tolling rule, and, therefore, Defendants' motion to dismiss under this theory is denied. [54]

---

[50]  Doc. 1 at ¶ 25.

[51]  *See infra*, note 99.

[52]  *See Perelman v. Perelman*,, 545 F. App'x 142, 150-51 (3d Cir. 2013) (holding that the statute of limitations for a fraudulent transfer occurring in 1990 would have begun accruing in 2007 once the plaintiff received documents raising red flags about the transaction).

[53]  Doc. 1 at ¶¶ 17, 18.

[54]  However, the Court leaves room for the possibility that Plaintiffs, with reasonable due diligence, would have been under an obligation to discover Defendants' fraud earlier. For instance, Plaintiffs may have had an obligation to request annual accountings from Defendants or to occasionally check their finances. However, the Court does not pass judgment on this issue, and encourages parties to revisit the matter at summary judgment, as both parties' briefing lack any significant legal support of the issue. At this point, reasonable minds could differ about whether Plaintiffs met their burden to show they have been reasonably diligent, and therefore the statute of limitations defense is not evident from the face of the complaint.

Defendants additionally claim that Plaintiffs have not pled with sufficient particularity to meet the pleading standard for fraud or mistake.[55] I disagree. Plaintiffs have pled that Defendants misappropriated $1.5 million through the use of a purported loan without Plaintiffs' agreement. Plaintiffs have provided the who (Defendants), what (misappropriated $1.5 million), when (between 2014 and 2017), where (in cyberspace), and how (by moving the misappropriated money into the separate, newly created entity Sourcecap, LLC). This is more than a general allegation of fraud or mistake; it is a specific description of what happened. Accordingly, Defendants' argument, that Plaintiffs have not sufficiently pled facts with specificity to render equitable tolling appropriate, fails.

### 2.    Sufficiency of Pleadings

Additionally, Defendants argue that Plaintiffs fail to state a claim for each of their five Counts. Specifically, Defendants argue that Counts I-IV fail to state a claim against Abundance only, while Count V fails to state a claim against both Defendants. I will address each individually.

### a.    Breach of Fiduciary Duty

Plaintiff's first Count is that of breach of fiduciary duty. Defendants argue that Plaintiffs did not sufficiently plead a fiduciary relationship between Plaintiffs and Abundance.[56] Specifically, Defendants argue that Plaintiffs have not pled a cession

---

[55]    Doc. 14 (Reply Br.) at 3.
[56]    Doc. 12 at 10-11.

of decision-making authority to Abundance. I find that Plaintiffs have plausibly pled both a fiduciary relationship and, relatedly, cession of control to Abundance.

To state a claim for breach of fiduciary duty, Plaintiffs must allege a fiduciary or confidential relationship existed between themselves and Defendants, and that "(1) that the Defendants negligently or intentionally failed to act in good faith and solely for the benefit of Plaintiffs in all matters for which they were employed; (2) that Plaintiffs suffered injury; and (3) the Defendants' failure to act solely for the Plaintiffs' benefit was a real factor bringing about Plaintiffs' injuries."[57] "A fiduciary duty is the highest duty implied by law."[58] "The Pennsylvania Supreme Court has said that a plaintiff alleging a fiduciary breach must first demonstrate that a fiduciary or confidential relationship existed . . . which requires that 'one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms.'"[59]

Some relationships, including "[p]rincipal and agent, trustee and cestui que trust, attorney and client, guardian and ward, and partners" create a fiduciary duty as a matter of law.[60] Other than those relationships creating a duty as a matter of law, Pennsylvania courts find fiduciary duties "in circumstances where the relative

---

[57]  *Reese v. Pook & Pook*, 158 F. Supp. 3d 271, 298 (E.D. Pa. 2016).
[58]  *Yenchi v. Ameriprise Fin. Inc.*, 639 Pa. 618, 632 (2017).
[59]  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 500 (3d Cir. 2013) (quoting *In re Estate of Clark*, 359 A.2d 777, 781 (Pa. 1976)).
[60]  *Id.* at 633.

position of the parties is such that the one has the power and means to take advantage of, or exercise undue influence over, the other."[61] "'Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship . . . exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest.'"[62]

However, fiduciary duties "do not arise 'merely because one party relies on and pays for the specialized skill of the other party.'"[63] That one party has superior knowledge or expertise does not immediately "impose a fiduciary duty on that party or otherwise convert an arm's-length transaction into a confidential relationship."[64] "'[T]he critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence on one side or weakness, dependence, or trust, justifiably reposed on the other side, which results in the effective ceding of control over decision-making by the party whose property is being taken.'"[65] "'A fiduciary duty may arise in the context of

---

[61]  *Id.*
[62]  *Belmont*, 708 F.3d at 500 (quoting *Silver v. Silver*, 219 A.2d 659, 662 (Pa. 1966).
[63]  *Yenchi*, 639 Pa. at 673 (quoting *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 23 (Pa. Super. 2002)).
[64]  *Yenchi*, 639 Pa. at 673.
[65]  *Mony Life Ins. Co. v. Snyder*, 275 F. Supp. 3d 516, 529 (M.D. Pa. 2017) (quoting *Yenchi*, 161 A.3d 811, 823).

consumer transactions only if one party cedes decision-making control to the other party.'"[66]

Here, Plaintiffs have pled that they ceded control of their finances over to Abundance, plausibly creating a confidential relationship. This was not an arm's length transaction; rather, Plaintiffs pled that Abundance advertises to clients that it will do all the work and research involved with investment with minimal client involvement,[67] that Defluri and Abundance "came to manage millions of dollars of investments" for Plaintiffs,[68] and that Abundance was to manage Plaintiffs' investments independently.[69] These pleadings are sufficient to demonstrate that Plaintiffs ceded control of investment decision-making to Defendants, including Abundance.[70]

Defendants argue that the form purporting to authorize the loan transaction, Exhibit C, forecloses a fiduciary relationship because it states that Abundance, stated on the form as "AWC," did not recommend the securities nor that it gave advice for

---

[66]  *Id.*
[67]  Doc. 1 at ¶¶ 16-17.
[68]  Doc. 1 at ¶ 18.
[69]  Doc. 1 at ¶ 75.
[70]  Additionally, from a cursory review, some case law suggests that an investment advisor is a fiduciary. *See In re Bocchino*, 504 B.R. 403, 405 (M.D. Pa. 2013) ("An investment adviser is a fiduciary.") (citing to *Securities and Exchg. Comm'n v. Cap. Gains Research Bureau*, 375 U.S. 180, 194 (1963)); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 502-03 (3d Cir. 2013) ("The federal fiduciary standard requires that an investment adviser act in the 'best interest' of its advisory client."). However, neither party has raised the issue in brief, and as Plaintiffs have sufficiently independently pled that Abundance was a fiduciary, the Court need not address the issue now.

14

them.[71] However, such an argument is better made at summary judgment. The Court understands Plaintiffs' pleadings to allege that this purported authorization form, Exhibit C, was a fraudulently created document as Plaintiffs claim they did not authorize any such transaction.[72] Plaintiffs have pled Abundance was plausibly involved in the transaction; Plaintiffs allege the fraud was able to occur because DeFluri had been given access to Plaintiffs' investments through the nature of Abundance's business.[73] Accordingly, Plaintiffs have plausibly stated a claim for breach of fiduciary duty under Pennsylvania law, and Defendants' motion to dismiss is denied for Count I.

### b.    Accounting

Plaintiffs' second claim is that, as Plaintiffs were partial owners in Sourcecap, LLC, they are entitled to an accounting of its finances.[74] Defendants respond that Plaintiffs have not alleged that Abundance has any ownership or governance in Sourcecap, LLC, and therefore Abundance is not responsible for an accounting under this theory.[75] Plaintiffs additionally argues that their fiduciary relationship with Abundance entitles them to an accounting.

---

[71]    Doc. 12 at 11.
[72]    Doc. 1 at ¶¶ 55-57.
[73]    Doc. 1 at ¶¶ 49-54.
[74]    Doc. 1 at 13-13.
[75]    Doc. 12 at 12.

"Under Pennsylvania law, 'entitlement to an accounting may be legal or equitable.'"[76] Legal accountings are dependent on breach of contract claims,[77] where a plaintiff must show an obligation to account stemming from the contract between the parties.[78] An equitable accounting, on the other hand, "is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, or the plaintiff possesses an adequate remedy at law."[79] "Equitable accounting 'does not exist merely because the plaintiff desires information that he could obtain through discovery.'"[80]

In this matter, Plaintiffs have not validly stated a claim for an accounting. As Plaintiffs have not raised a breach of contract claim, they may not ask for a legal accounting. Additionally, Plaintiffs have not pled the elements entitling them to an equitable accounting; as addressed above, Plaintiffs have stated a fiduciary duty owed to Defendants, but Plaintiffs' complaint fails to plead that they have no adequate remedy at law. It appears instead that Plaintiffs "desire[] information that

---

[76]  *Chaleplis v. Karloutsos*, No. 21-1492, 2023 WL 2976277, at *5 (E.D. Pa. Apr. 18, 2023) (quoting *Bordoni v. Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 387 (E.D. Pa. 2019); *Buczek v. First Nat. Bank of Mifflintown*, 531 A.2d 1122, 1123 (Pa. Super. Ct. 1987).

[77]  *Chaleplis*, 2023 WL 2976277, at *5 (collecting cases); *Bordoni*, 374 F. Supp. 3d at 387.

[78]  *Bordoni*, 374 F. Supp. 3d at 387; *Haft v. United States Steel Corp.*, 346 Pa. Super. 404, 499 (1985).

[79]  *McWreath v. Range Res.*, 81 F. Supp. 3d 448, 468 (W.D. Pa. 2015); *Harold v. McGann*, 406 F. Supp. 2d 562, 578 (E.D. Pa. 2005); *Rock. v. Pyle*, 720 A.2d 137, 142 (Pa. Super. Ct. 1998).

[80]  *Chaleplis*, 2023 WL 2976277, at *5 (quoting *Buczek v. First Nat. Bank of Mifflintown*, 531 A.2d 1122, 1124 (Pa. Super. Ct. 1987)).

[they] could obtain through discovery."[81] Therefore, Plaintiffs have not pled either an equitable or legal accounting is proper here.

Furthermore, Defendants are correct that Plaintiffs have not pled that Abundance had any sort of ownership in Sourcecap, LLC, and therefore would not be entitled to any sort of partnership accounting.[82] Accordingly, as Plaintiffs have not pled an entitlement to a legal, equitable, nor partnership accounting, Defendants' motion to dismiss Plaintiffs' Count II for an accounting is granted with respect to Abundance.[83]

### c.    Conversion

Plaintiffs' third claim is for conversion. "Conversion is defined under Pennsylvania law as 'the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful

---

[81]  *Buczek*, 531 A.2d at 1124.

[82]  Plaintiffs argue that "Plaintiffs are not aware of who an owner in SOURCE CAP is, or Abundance's full involvement in the matter." Doc. 13 at 10-11. As unfortunate as this lack of knowledge may well be, it does not meet the pleading standard of plausibility. Stating a lack of knowledge about whether Abundance was a partner is not the same thing as plausibly pleading that they were.

Additionally, the Court's understanding of partnership accounting actions is incongruent with how the parties are referring to such a claim. Partnership accounting requests are typically brought with an underlying dissolution claim. *See Clement v. Clement*, 436 Pa. 466, 467 (1970). Therefore, should Plaintiffs file an amended complaint, Plaintiffs should provide legal support for their contention that a partnership accounting can be brought as an independent claim. At this point, because Plaintiffs have not pled that Abundance was a partner or owner in Sourcecap, the issue is moot.

[83]  Should Plaintiffs file an amended complaint revising this claim, both parties are instructed to provide more legal support for their contentions. Specifically, Plaintiffs should clarify what theory of accounting they seek, partnership, equitable, or legal, and Defendants should clarify which elements they believe have not been pled sufficiently.

justification.'"[84] "Although Pennsylvania law does not require specific intent to commit a wrong, 'the exercise of control of the chattel must be intentional,'"[85] and money can be the subject of conversion so long as the plaintiff had a property interest in the money at the time of the alleged conversion.[86] "A conversion can be committed in several ways, including: (a) acquiring the property with an intent to assert a right to it; (b) transferring the property in a manner that deprives the owner of control; (c) 'unreasonably withholding possession from one who has the right to it'; and (d) "[s]eriously damaging or misusing the chattel in defiance of the owner's rights."[87]

Here, Plaintiffs have plausibly stated a claim for conversion against Abundance. Specifically, Plaintiffs have alleged facts sufficient to show that

---

[84]  *QVC Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 600 (E.D. Pa. 2016) (quoting *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 529 (E.D. Pa. 2012)); *see also Spector Gadon & Rosen, P.C. v. Rudinski, Orso & Lynch*, 231 A.3d 923, 925 (Pa. Super. 2020).

[85]  *QVC*, 159 F. Supp. 3d at 600.

[86]  *Spector Gadon*, 231 A.3d at 925; *In re Lewis*, 478 B.R. 645, 668 (E.D. Pa. 2012); *see also Allied World Ins. Co. v. Keating*,

[87]  *Win & Son*, 178 F. Supp. 3d 234, 242-43 (E.D. Pa. 2016) (quoting *Norriton E. Realty Corp v. Central-Penn Nat. Bank*, 435 Pa. 57, 60 (1969)). There appears to be some conflicting case law about whether a conversion exists where the defendant has not appropriated the property for his own use. *Compare Ranalli v. Etsy.com LLC*, 570 F. Supp. 3d 301, 308 (W.D. Pa. 2021) ("'"[N]ot every destruction or deprivation of property amounts to a conversion; there must be an actual appropriation of it by the offending party for his own use.'") (quoting *Win & Son, Inc. v. City of Philadelphia*, 178 F. Supp. 3d 234, 242 (E.D. Pa. 2016)) *with Ickes v. Grassmeyer*, 30 F. Supp. 3d 375, 402 (W.D. Pa. 2014) ("A conversion can occur even if the defendant does not appropriate the property for his or her own use.") (citing *Central Transport, LLC v. Atlas Towing, Inc.*, 884 F. Supp. 2d 207, 218-19 (E.D. Pa. 2012)). The parties should analyze the issue at subsequent stages of litigation, but at this point, the Court must resolve disputes in favor of the non-moving party, Plaintiffs here.

Abundance plausibly "transferr[ed] [Plaintiffs'] property in a manner that deprive[d] [Plaintiffs] of control." Plaintiffs have pled that Abundance was hired by Abbey and entrusted with Plaintiffs' assets to manage.[88] Plaintiffs have pled that Defendants, either DeFluri or Abundance or both, authorized the transfer of Plaintiffs funds to Sourcecap, LLC.[89] Additionally, the document that Defendants provided to Plaintiffs purporting to authorize the funds, Exhibit C, was created by Abundance indicating that Abundance would post the loan transaction to Abbey's account.[90] Therefore, while the exact extent of Abundance's involvement remains unclear, Abundance was clearly involved in the transaction in some way, even if that was only authorizing the transfer of funds to Sourcecap, LLC. Plaintiffs have pled sufficient facts to raise a reasonable expectation that discovery will reveal evidence indicating that Abundance's acts qualify as conversion.[91] Accordingly, Defendants' motion to dismiss Count III is denied.

### d.    Unjust Enrichment

Plaintiffs' next claim is for unjust enrichment. "To prevail on an unjust enrichment claim, a plaintiff must demonstrate: '(1) a benefit conferred on the

---

[88]    Doc. 1 at ¶¶ 18, 75.
[89]    Doc. 1 at ¶¶ 87-91, Doc. 1-3 (Exhibit C).
[90]    Doc. 1-3.
[91]    Additionally, the parties reference and dispute the applicability of the "participation theory," whereby an agent who participates in conversion on behalf of a corporation may be liable without personally receiving a benefit. *See McDonald v. First Nat. Bank of McKeesport*, 44 A.2d 265, 266 (Pa. 1945). The participation theory is inapplicable here, as Abundance was not an agent of a corporation. Neither party has provided a persuasive reason to apply the contours of that doctrine to the issue before the Court, nor legal authority suggesting it is applicable.

defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff.'"[92] "'[A] claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'"[93]

Plaintiffs argue only that they do not know whether Abundance had any interest in Sourcecap, LLC or received any benefit from the transaction. Unlike conversion, unjust enrichment centers on the benefit improperly conferred on the defendant. Accordingly, while it is understandable that Plaintiffs would not know who had interest in Sourcecap, LLC, Plaintiffs need to plead something that would nudge their claim across the line to plausible. As it stands, Plaintiffs have pled that Abundance facilitated the transaction but have not pointed to any benefit that Abundance received from doing so. After all, Plaintiffs have sued Abundance, not Sourcecap, LLC. Therefore, Defendants' motion to dismiss Plaintiffs' unjust enrichment claim against Abundance is granted.

---

[92]    *Allied World Ins. Co. v. Keating*, No. 22-1996, 2023 WL 1463391, at *3 (3d Cir. Feb. 2, 2023) (quoting *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010)).

[93]    *Id.* (quoting *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008)).

e.    **UTPCPL**

Finally, Plaintiffs bring a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Defendants move to dismiss this claim against both Abundance and DeFluri.

"The UTPCPL prohibits any person from engaging in '[u]nfair methods of competition and unfair or deceptive acts or practices,'" . . . and provides a non-exhaustive list of specific forbidden acts, [at] § 201–2(4).'"[94] Plaintiffs point to the broad catchall provision in § 201–2, specifically § 201–2 (xxi),[95] which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."[96] To state a claim under this catchall, Plaintiffs must plead "a deceptive act, that is conduct likely to deceive a consumer acting reasonable under similar circumstances; justifiable reliance based on the misrepresentations or deceptive conduct; and ascertainable loss caused by justifiable reliance."[97] While the interpretation of this catchall has changed significantly over time, "[t]oday, the vast weight of authority in Pennsylvania holds that a plaintiff can state a claim under the catch-all provision by pleading facts sufficient to support a

---

[94] *Seldon v. Home Loan Servs. Inc.*, 647 F. Supp. 2d 451, 465 (E.D. Pa. 2009) (quoting 73 Pa. Stat. Ann. § 201).

[95] Doc. 13 at 13.

[96] 73 Pa. Stat. Ann. § 201–2 (xxi)

[97] *Jordet v. Just Energy Solutions, Inc.*, 505 F. Supp. 3d 214, 222 (W.D.N.Y. 2020) (applying the Pennsylvania statute) (citing *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016)). Neither party provided the applicable law under this provision for the Court, nor analyzed the required elements.

claim for fraud *or deception*."[98] "The elements of a deception claim are: (1) 'a deceptive act,' meaning 'conduct that is likely to deceive a consumer acting reasonable under similar circumstances'; (2) 'justifiable reliance [based on] the defendants' misrepresentation or deceptive conduct'; and (3) an 'ascertainable loss' caused by this justifiable reliance."[99] "Unlike fraud claims, deception claims are not subject to Rule 9(b) and need only comply with the pleading requirements imposed by Rule 8(a)."[100]

Neither party has substantively addressed whether Plaintiffs' plead an affirmatively fraudulent or deceptive act, nor whether Plaintiffs pled justifiable reliance. However, it is plausible that Defendants' actions as pled make out a *prima facie* case of deception. This is especially so where, as I have found above, Plaintiffs

---

[98] *Landau*, 223 F. Supp. 3d at 417 (collecting cases) (emphasis added); *Phillips v. State Farm Mut. Auto. Ins. Co.*, No. 4:14-CV-1919, 2015 WL 3454537, at *3 (M.D. Pa. May 29, 2015) (citing *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013)) (Brann, J.).

[99] *Landau*, 223 F. Supp. 3d at 418 (quoting *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510 (E.D. Pa. 2010)). *See also Phillips*, 2015 WL 3454537, at *3 (describing a deceptive act as "'the act of intentionally giving a false impression or a tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it.'") (quoting *Wilson v. Parisi*, 549 F. Supp. 2d 637, 666 (M.D. Pa. 2008)).

An omission can suffice, especially where the deceiver was under a duty to report such deception. *See Dukich v. IDEA US Retail, LLC*, No. 20-2182, 2021 1534520, at *7 (E.D. Pa. Apr. 19, 2021) (finding an omission of failing to notify customers of a recall as sufficient to qualify a deceptive act); *Elbeco Incorp. v. Nat'l Retirement Fund*, No. 5:15-CV-00318, 2016 WL 3902933, at *7 (E.D. Pa. July 19, 2016) ("'An omission is actionable as a fraudulent misrepresentation where there is a duty to disclose.'") (quoting *Fernander v. Amanze,* No. CIV.A. 02-603, 2007 WL 4083769, at *4 (E.D. Pa. Nov. 15, 2007)).

[100] *Landau*, 223 F. Supp. 3d at 417 (citing *Slemmer v. McGlaughlin Spray Foam Insulation*, 955 F.Supp.2d 452, 463 (E.D. Pa. 2013)).

have pled a fiduciary relationship between the parties. Accordingly, Defendants' failure to disclose the removal of the money from Plaintiffs' accounts could qualify as a deceptive act, and Plaintiffs could have been justified in relying on the omission due to the fiduciary nature of the relationship.[101] Additionally, it is unquestioned that the pleadings, assumed as true, indicate Plaintiffs suffered a loss. Therefore, Plaintiffs have plausibly pled deception under the catchall provision of the UTPCPL, and Defendants' motion to dismiss is denied.[102]

## III.    CONCLUSION

Defendants' motion to dismiss, Doc. 10, is granted as to Abundance for Plaintiffs' Counts II and IV and denied for Plaintiffs' Counts I, III, and IV.

Plaintiffs are granted leave to amend. "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[103]  But the law in the Third Circuit is

---

[101] *See Hunt v. United States Tobacco Co.*, 538 F.3d 217, 227 n.17 (3d Cir. 2008) ("The [Pennsylvania Superior] Court recognized . . . a presumption of reliance where the defendant and plaintiffs are in a fiduciary relationship.") (citing *Debbs v. Chrysler Corp.*, 2002 PA Super 326, *P61 (Pa. Super. 2002) ("This Court has excused proof of individual detrimental reliance where the defendant has a fiduciary relationship with the plaintiffs.").

[102] However, again, the parties have largely not addressed the substantive issues at hand. The Court reminds parties that it is "not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Accordingly, should further litigation on these issues proceed, the Court expects significantly more legal support and analysis to accompany the parties' arguments.

[103] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[104]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[104] *Id.* (quoting FED. R. CIV. P. 15(a)).